**Victor RAMIREZ, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 02–1472 C.

United States Court of Federal Claims.

July 10, 2003.

Victor Ramirez, Flushing, NY, pro se.

Nancy M. Kim, Commercial Litigation Branch, Civil Division, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Robert D. McCallum, Jr., Assistant Attorney General, United States Department of Justice, for the defendant.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

The plaintiff filed a complaint, *pro se*, seeking to recover the sum of $12,920.00 allegedly seized improperly by the Drug Enforcement Administration (DEA) on March 5, 2001 during the arrest of his brother, and subsequently administratively forfeited by the DEA to the United States on July 19, 2001. In the alternative, the plaintiff seeks an order from this court compelling the DEA to reopen administrative forfeiture proceedings so that the plaintiff may prove ownership of the seized property. The United States has filed a motion to dismiss the complaint for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief may be granted.

According to the complaint, the plaintiff, Victor Ramirez, is the brother of Carlos Ramirez. In a September 30, 2002 affidavit attached to the complaint, Carlos Ramirez states that on March 5, 2001 he was arrested by officers of the DEA and charged with the criminal sale of a controlled substance in the second degree and criminal possession of a weapon in the fourth degree.[1] At the time of Carlos Ramirez's arrest on March 5, 2001, the complaint states that Carlos Ramirez shared a residence with the plaintiff, Victor Ramirez, located at 143–55 41st Avenue, Flushing, New York, 11355. According to the complaint, at the time of Carlos Ramirez's arrest, DEA officers searched the Ramirez brothers' shared residence. In the September 30, 2002 affidavit attached to the complaint, Carlos Ramirez states that "[d]uring a search of the residence that I shared with my brother, Victor Ramirez, twelve thousand nine hundred and twenty ($12,-920.00) dollars was discovered." The parties agree that these funds, in the form of United States currency, were seized by the DEA officers who searched the Ramirez brothers' house.[2] The plaintiff alleges in his complaint

---

1. Although not necessary to the court's resolution of the defendant's motion to dismiss, the court notes that in an April 11, 2002 letter to the Forfeiture Counsel of the DEA, Carlos Ramirez states that at the time of his March 5, 2001 arrest he was charged with criminal possession of a controlled substance in the first degree and possession of a weapon in the third degree. Carlos Ramirez also states in the April 11, 2002 letter

that he entered a plea of guilty to these charges on November 8, 2001 and was subsequently sentenced to prison terms of seven years to life and one and one-half to three years, to be served concurrently.

2. At the time of the seizure of the $12,920.00 at issue in this case, DEA officers also seized a 1998

that at the time of his brother's arrest, Carlos Ramirez informed the arresting officers that the $12,920.00 seized belonged to the plaintiff. In the September 30, 2002 affidavit submitted with the complaint, Carlos Ramirez states that he "informed the arresting officer that the money taken belonged to Victor Ramirez" and that he "was advised by the arresting officer that the funds would be returned." The complaint also alleges that the arresting officers "told Carlos Ramirez that once it was determined that the confiscated funds were not the proceeds of any illegal drug transaction, the monies would be returned to its owner, namely Victor Ramirez."

Attached to the defendant's motion to dismiss are three certified letters, each titled "Notice of Seizure," sent to Carlos Ramirez by the DEA on April 30, 2001. Each Notice of Seizure is printed on DEA letterhead and provides a description of the property, $12,920.00 in United States currency, seized on March 5, 2001. The three certified letters were sent to Carlos Ramirez at the following addresses: Carlos Ramirez, 143–55 41st Avenue, Flushing, New York, 11355, the address at which Carlos Ramirez was arrested on March 5, 2001; Carlos Ramirez, care of Lawrence Hermann, Esquire, 37–51 76th St., Jackson Heights, New York, 11372; and Carlos Ramirez, Prisoner Identification Number 3490104786, Riker's Island, East Elmhurst, New York, 11370. The Notices of Seizure also contain instructions describing the procedures by which notice recipients may seek to recover seized goods:

> You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal Court. . . .

> If you want to request the remission (pardon) or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the

DEA within thirty (30) days of your receipt of this notice. The petition must include proof of your interest in the property and state the facts and circumstances which you believe justify remission or mitigation. . . .

> In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by June 4, 2001. The claim need not be made in any particular form (Title 18, U.S.C., Section 983(a)(2)(D)). The claim shall identify the specific property being claimed; state the claimant's interest in such property; and be made under oath, subject to a penalty of perjury. (Title 18 U.S.C., Section 983(a)(2)(C)).

In addition, notice of the seizure of the $12,920.00 was published in the *Wall Street Journal* for three consecutive weeks on May 14, 2001, May 21, 2001, and May 29, 2001. Each published notice provides the following description of the confiscated property: "$12,920.00 U.S. Currency, Flushing, NY, Ramirez, Carlos Mario AKA Mike, 03/05/01."

On April 11, 2002, the plaintiff's brother, Carlos Ramirez, wrote to the Forfeiture Counsel of the DEA, Office of Domestic Operations, Asset Forfeiture Section from the Sing Sing Correctional Facility in Ossining, New York. In this letter, Carlos Ramirez makes the following request: "Although [I] have been provided with the DEA Asset ID No. for the Mazda and am without the Asset number for the U.S. currency, and as so, I ask that you please provide me with such, so that I may reclaim *my* property."[3] (Emphasis added.) Attached to both the plaintiff's complaint and the defendant's motion to dismiss is the response which Robert Porzeinski, Senior Attorney in the Asset Forfeiture Section of the DEA, sent to Carlos Ramirez

---

Mazda Millennia. In the September 30, 2002 affidavit, the plaintiff's brother, Carlos Ramirez, states that the seized 1998 Mazda Millennia belonged to Dallanara Palma. The plaintiff currently before the court does not claim ownership or seek recovery of the 1998 Mazda Millennia.

3. The court notes, however, that the Asset ID Number for the $12,920.00 is printed on each of the three Notices of Seizure sent to Carlos Ramirez at his home address, his attorney's address, and his prison address at Riker's Island. The Asset ID Number for the seized currency was 01–DEA–389979.

on April 29, 2002. The April 29, 2002 letter states:

The Drug Enforcement Administration (DEA) received your correspondence on April 17, 2002, regarding the above-referenced property [$12,920.00 in United States currency]. If it was your intention to file a claim to contest the seizure in U.S. District Court, please be advised that the time period for filing such a claim expired on June 4, 2001.

Furthermore, this property was administratively forfeited and disposed of according to law. Under Title 21, C.F.R., Section 1316.80(a), once disposal of the forfeiture property occurs, a Petition for Remission or Mitigation of Forfeiture can no longer be accepted. Therefore, the time period to file a petition in this matter has also expired. Consequently, your correspondence is being returned.

This matter is now closed in this office.

On October 29, 2002, the plaintiff, Victor Ramirez, filed the above-captioned action in this court seeking recovery of the $12,920.00 seized from the house which he shared with his brother, Carlos Ramirez, at the time of Carlos Ramirez's arrest on March 5, 2001. In the complaint, Victor Ramirez claims that the confiscated funds constituted part of his personal savings on which he had paid state and federal taxes. The complaint further alleges that "although [Carlos Ramirez's] arresting officer was advised that the confiscated property belonged to Victor Ramirez ... Victor Ramirez was never provided with a Notice of Seizure." The plaintiff claims that the alleged failure of the DEA to provide him, Victor Ramirez, with notice of the seizure effectively deprived him of the opportunity to establish ownership over the confiscated funds in violation of his rights under the federal forfeiture statutes and the Fifth Amendment to the United States Constitution. The United States has filed a motion to dismiss the complaint.

## DISCUSSION

Initially, the court recognizes that the plaintiff is proceeding *pro se,* and, accordingly, the plaintiff is entitled to liberal construction of his pleadings. *See Haines v. Kerner,*

404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977); *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). The United States Supreme Court has stated that a *pro se* "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support his claim which would entitle him to relief." *Hughes v. Rowe,* 449 U.S. at 10, 101 S.Ct. 173 (citing *Haines v. Kerner,* 404 U.S. at 520–521, 92 S.Ct. 594). This is so because "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." *Id.* at 15, 101 S.Ct. 173.

However, "there is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his pleading. 'A complaint that is ... confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation....'" *Scogin v. United States,* 33 Fed.Cl. 285, 293 (1995) (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 775–76 (7th Cir.1994) (citations omitted)). *See also Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925) ("The petition may not be so general as to leave the defendant in doubt as to what must be met.") (citations omitted).

The plaintiff's complaint presents two claims, both predicated on the DEA's alleged failure to provide this plaintiff, Victor Ramirez, with notice of the seizure of the $12,920.00. First, the plaintiff brings a claim under the United States Constitution, alleging that defective notice of seizure resulted in the plaintiff, Victor Ramirez, being "denied due process as guaranted [sic] to all citizens by the United States Constitution." The plaintiff also claims that he is entitled to relief under 18 U.S.C. § 983, and seeks a

judgment from this court "declaring the forfeiture ineffective against this claimant and ordering the DEA to reinstitute the proceeding against claimant so that he may establish his ownership of the funds." The plaintiff claims that he is entitled either to the immediate return of the $12,920.00, or to the reopening of forfeiture proceedings.

In response, the defendant has filed a motion to dismiss both counts of the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). The defendant argues that this court does not have subject matter jurisdiction to review the plaintiff's claims under the Due Process Clause of the Fifth Amendment to the Constitution or under the federal forfeiture statutes. In the alternative, the defendant argues that even if the court should determine that it has jurisdiction over the plaintiff's claims, consideration of the claims is nevertheless barred by the doctrine of *res judicata*. Because the court finds, as discussed below, that this court does not have subject matter jurisdiction to review the plaintiff's due process claim under the Fifth Amendment, nor to review the propriety of the civil forfeiture proceedings under the federal forfeiture statutes, the court does not reach the defendant's *res judicata* argument.

Subject matter jurisdiction may be challenged at any time by the parties, by the court sua sponte, even on appeal. *Fanning, Phillips, Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding & Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998); *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1324 (Fed.Cir.1997); *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991); *Bowen v. United States,* 49 Fed.Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof on a motion to dismiss for lack of

jurisdiction), *aff'd,* 292 F.3d 1383 (Fed.Cir. 2002); *Schweiger Constr. Co. v. United States,* 49 Fed.Cl. 188, 205 (2001); *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404 (1994). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988); *Thomas v. United States,* 56 Fed.Cl. 112, 115 (2003); *Martinez v. United States,* 48 Fed.Cl. 851, 857 (2001), *aff'd in part,* 281 F.3d 1376 (Fed. Cir.), *reh'g denied* (2002); *Bowen v. United States,* 49 Fed.Cl. at 675; *Vanalco, Inc. v. United States,* 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995), *appeal dismissed,* 86 F.3d 1178, 1996 WL 285759 (Fed.Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Brubaker Amusement Co., Inc. v. United States,* 304 F.3d 1349, 1355 (Fed.Cir. 2002), *cert. denied, Penn Triple S v. United States,* —— U.S. ——, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003); *Leider v. United States,* 301 F.3d 1290, 1295 (Fed.Cir.2002), *reh'g and reh'g en banc denied* (2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003); *Conti v. United States,* 291 F.3d 1334, 1338 (Fed.Cir.2002), *cert. denied,* 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003); *Consolidated Edison Co. v. O'Leary,* 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied sub nom. Consolidated Edison Co. v. Pena,* 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States,* 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (1997); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States,* 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied,* 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on

which the non-movant might prevail, the motion must be denied.'"); *RCS Enters., Inc. v. United States*, 46 Fed.Cl. 509, 513 (2000).

Pursuant to Rule 8(a)(1) of the Rules of the Court of Federal Claims (RCFC) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir.1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99; *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed.Cir. 2002); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States*, 119 F.3d at 1580), *cert. denied*, 535 U.S. 1096, 122 S.Ct. 2290, 152 L.Ed.2d 1049 (2002); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998); *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d at 1167 (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274

(Fed.Cir.1991)); *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States*, 873 F.2d at 1416; *Ho v. United States*, 49 Fed.Cl. 96, 100 (2001), *aff'd*, 30 Fed.Appx. 964 (Fed.Cir.2002); *Alaska v. United States*, 32 Fed.Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. at 404–05. When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 747; *see also Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed.Cir. 1993) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."), *cert. denied*, 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994); *Vanalco v. United States*, 48 Fed.Cl. at 73 ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.").

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491 (1994). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or

unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, or statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir. 1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr,* 533 U.S. 289, 299 n. 10, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States,* 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001); *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, " 'it does not create any substantive right enforceable against the United States for money damages.' " *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States,* 249 F.3d 1364, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001), *aff'd,* 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369,

1373 (Fed.Cir.2000); *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir.1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.' " *White Mountain Apache Tribe v. United States,* 249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999)); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir. 1996), *reh'g denied and en banc suggestion declined* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

As noted above, the plaintiff's constitutional and statutory claims are both predicated upon the DEA's alleged failure to provide the plaintiff with adequate notice of the seizure of the $12,920.00. The alleged defect in notice, of which the plaintiff complains, derives from two different statutory sources. The plaintiff first asserts that he was entitled to notice of the seizure pursuant to 19 U.S.C. § 1607. The relevant portion of section 1607 provides that "[w]ritten notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a) (2000).[4] Section

---

**4.** The court notes that although the record contains conflicting assertions of ownership of the

1607 is a provision of the Tariff Act of 1930, *see* Tariff Act of 1930, June 17, 1930, ch. 497, 46 Stat. 580 (codified in scattered sections of 19 U.S.C.), and by the terms of the Tariff Act applies to seizures conducted by customs officers pursuant to the customs laws, *see* 19 U.S.C. § 1602 (2000) ("It shall be the duty of any officer, agent, or other person authorized by law to make seizures of merchandise or baggage subject to seizure for violation of the customs laws....").

The $12,920.00 at issue in this case was seized by DEA agents pursuant to 21 U.S.C. § 881, a provision of the Controlled Substances Act (CSA).[5] *See* Controlled Substances Act, Pub.L. 91–513, 84 Stat. 1242 (1970) (codified in scattered sections of 21 U.S.C.). However, title 21, section 881 is silent on the issue of notice. *See* 21 U.S.C. § 881. The nexus between 19 U.S.C. § 1607 and 21 U.S.C. § 881 appears to lie in subsection (d) of title 21, section 881, which provides:

> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof....

21 U.S.C. § 881(d). This court and others have understood subsection (d) of section 881 to incorporate into the CSA those provisions

of the Tariff Act, such as section 1607, relating to seizure, summary and judicial forfeiture, and condemnation. *See Sarlund v. United States,* 39 Fed.Cl. 803, 805 (1998) ("The effect of § 881(d) was described as follows: 'Forfeiture proceedings arising out of drug offenses are governed by the same statutory provision [sic] as apply to customs forfeitures.'") (quoting *United States v. One Motor Yacht Named Mercury,* 527 F.2d 1112, 1114 (1st Cir.1975)).

■ The plaintiff claims that as a result of the DEA's failure to provide him with notice of the seizure, he was denied the opportunity to defend his claimed interest in the $12,920.00, in violation of his right to due process of law under the Fifth Amendment to the Constitution. [Cmplt. ¶ 4]. The United States Court of Appeals for the Federal Circuit has indicated, however, that the Court of Federal Claims does not have jurisdiction over claims based solely on the Due Process Clause of the Fifth Amendment because the clause is not money-mandating. *See James v. Caldera,* 159 F.3d at 581 (noting that neither the Double Jeopardy Clause nor the Due Process Clause of the Fifth Amendment is money-mandating); *Crocker v. United States,* 125 F.3d 1475, 1476 (Fed.Cir.1997) (upholding the trial court's conclusion that it did not have jurisdiction over due process claims under the Fifth Amendment). Thus, this court must dismiss the plaintiff's due process claim for lack of jurisdiction over the subject matter.

■ The plaintiff also asserts jurisdiction pursuant to "Title 18 U.S.C. Section 983(a)(2)(d)(c)." No such provision exists.

---

seized currency, in the April 11, 2002 letter to the Forfeiture Counsel of the DEA, Carlos Ramirez requests the asset forfeiture number for the seized currency "so that I [Carlos Ramirez] may reclaim *my* property." (Emphasis added.) This raises the question of whether the plaintiff, Victor Ramirez, was entitled to notice.

**5.** Title 21, section 881 of the United States Code provides:

> The following shall be subject to forfeiture by the United States and no property right shall exist in them:
>
>      *    *    *    *    *    *
>
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in ex-

change for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(6) (2000).

However, 18 U.S.C. § 983(e), provides the following procedure for challenging closed civil forfeiture proceedings on the grounds of defective notice:

(1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—

(A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

(B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e) (2000). By its own terms, subsection (e) applies to "any nonjudicial civil forfeiture proceeding under a civil forfeiture statute...." 18 U.S.C. § 983(e)(1). Subsection (i) of section 983 defines "civil forfeiture statute," with certain exceptions not applicable here, as "any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense...." 18 U.S.C. § 983(i)(1). The plaintiff's *pro se* complaint, therefore, can be construed as claiming that the plaintiff was entitled to notice under 19 U.S.C. § 1607, as incorporated into the CSA by 21 U.S.C. § 881, and that because he was never provided with such notice, he is now entitled to a declaration from this court setting aside the DEA's forfeiture of the $12,920.00 pursuant to 18 U.S.C. § 983(e).[6]

The United States Court of Appeals for the Federal Circuit has held that judicial review of the correctness of administrative forfeiture proceedings concerning property seized pursuant to 21 U.S.C. § 881 is "unambiguously allocated" to the district courts.

*Crocker v. United States*, 125 F.3d at 1477. At trial, the plaintiff in *Crocker* argued that the DEA's violation of the plaintiff's "procedural rights" under the CSA entitled the plaintiff to seek relief in the Court of Federal Claims. *See Crocker v. United States*, 37 Fed.Cl. 191, 196 (1997). The plaintiff in *Crocker* advanced theories of recovery based on this court's alleged jurisdiction to review due process or seizure claims under the Fifth Amendment to the United States Constitution, discussed above, administrative action under the Administrative Procedure Act, 5 U.S.C. §§ 701–06, and claims of illegal exaction. *See Crocker v. United States*, 125 F.3d at 1476–77. The Federal Circuit affirmed the trial court's finding of lack of jurisdiction under the Administrative Procedure Act, noting that the Court of Federal Claims "lacks the general federal question jurisdiction of the district courts, which would allow it to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act." *Id.* at 1476 (citation omitted). The Federal Circuit also upheld the trial court's dismissal of the plaintiff's illegal exaction claim, holding that relief for illegal exaction arising from defective administrative civil forfeiture proceedings must be sought in the district courts:

The relief that Crocker wants requires that a district court evaluate the adequacy of notice provided before the agency ordered her assets forfeited, and it requires that the reviewing court fashion equitable relief if any is called for. The Tucker Act provides jurisdiction in the Court of Federal Claims to recover "exactions said to have been illegally imposed by federal officials (except where Congress has expressly placed jurisdiction elsewhere)." Congress has unambiguously allocated these judicial activities to the district courts. *See* 28 U.S.C. § 1355(a) (1994); *United States v. King*, 395 U.S. at 2–3, 89 S.Ct. at 1501–02.

---

6. The plaintiff also claims that he "has an opportunity to contest the forfeiture" pursuant to 21 C.F.R. § 1316.75. The regulation at 21 C.F.R. § 1316.75 provides that in the case of seizure of United States coins and currency,

[the] DEA Asset Forfeiture Section shall cause a notice of the seizure and of the intention to forfeit and sell or otherwise dispose of the property to be published once a week for at least 3 successive weeks in a newspaper of general circulation in the judicial district in which the processing for forfeiture is brought.

21 C.F.R. § 1316.75 (2003). As indicated above in the court's findings of fact, the DEA complied with 21 C.F.R. § 1316.75 by publishing notice of the seizure in the *Wall Street Journal* for three successive weeks in May, 2001.

*Id.* at 1477 (quoting *Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1572–73 (Fed. Cir.1996)). In support of the conclusion that Congress had "unambiguously allocated" review of civil forfeiture proceedings to the district courts, the *Crocker* court cited 28 U.S.C. § 1355(a). *See id.* Section 1355(a) provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.

28 U.S.C. § 1355(a) (2000).

In *Vereda, Ltda. v. United States,* the United States Court of Appeals for the Federal Circuit again addressed the question of this court's jurisdiction over challenges to administrative forfeiture proceedings brought under the CSA. *See Vereda, Ltda. v. United States,* 271 F.3d, 1367, 1369 (Fed.Cir. 2001). Citing *Crocker,* the Federal Circuit in *Vereda* noted that *"Crocker* bars Vereda from challenging the procedural validity of the *in rem* administrative forfeiture of the airplane [7] in the Court of Federal Claims." *Id.* at 1374 n. 8. The Federal Circuit also refused to consider the plaintiff's claim that the airplane was not subject to forfeiture under the CSA, holding that the Court of Federal Claims also lacked subject matter jurisdiction over substantive challenges to administrative forfeiture proceedings:

> The trial court's exercise of jurisdiction over Vereda's substantive claims also is barred by the effect of 19 U.S.C. § 1609(b). Section 1609(b) gives a declaration of forfeiture "the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." The Court of Federal Claims "does not have jurisdiction to review the decisions of district courts."

**7.** *Vereda* involved a dispute over an airplane seized by the DEA based on evidence that the airplane was purchased with illegal drug profits

*Id.* at 1375 (quoting *Joshua v. United States,* 17 F.3d 378, 380 (Fed.Cir.1994)). Finally, the Federal Circuit in *Vereda* found that Congress, in enacting the CSA, had provided for "complete administrative review by DEA and judicial review in district court of (i) the merits of a seizure and forfeiture of property initiated under 21 U.S.C. § 881 and (ii) any related due process claims." *Id.* (emphasis in original). This " 'specific and comprehensive scheme for administrative and judicial review,' " the Federal Circuit held, preempts the Court of Federal Claims's Tucker Act jurisdiction over the "subject matter covered by the scheme." *Id.* (quoting *Vincent's Med. Ctr. v. United States,* 32 F.3d 548, 549–50 (Fed.Cir.1994)). Thus, the Federal Circuit's decision in *Crocker* directs this court to dismiss procedural challenges to administrative forfeiture proceedings commenced under the CSA. Similarly, the Federal Circuit's decision in *Vereda* establishes that this court lacks jurisdiction to consider substantive challenges by one with a prior interest or an innocent purchaser brought against administrative forfeiture proceedings commenced under the CSA.

The administrative forfeiture proceedings contested in this case were commenced under 18 U.S.C. § 881(a)(6), and the plaintiff, Victor Ramirez, as one with an alleged prior interest in the forfeited property, has advanced procedural and substantive grounds for relief, alleging (1) that the plaintiff never received notice of the seizure and (2) that the plaintiff is the innocent owner of the money seized. Although the *Crocker* and *Vereda* decisions seem to direct the court to dismiss the complaint for lack of jurisdiction over the subject matter, the plaintiff has alleged that this court has jurisdiction to decide the plaintiff's claims pursuant to 18 U.S.C. § 983, quoted above. Section 983 was not at issue regarding the plaintiffs' claims in *Crocker* or *Vereda,* and neither the Court of Federal Claims nor the United States Court of Appeals for the Federal Circuit has yet addressed how section 983 impacts the jurisdiction of the Court of Federal Claims regarding challenges to administra-

and was intended to be used to transport illegal drugs. *Vereda, Ltda. v. United States,* 271 F.3d at 1370, 1372.

tive forfeiture proceedings. *See Vereda, Ltda. v. United States,* 271 F.3d at 1371 n. 4. Nor does section 983 address the question of this court's jurisdiction over cases challenging closed administrative forfeitures on the grounds of insufficient notice of seizure under section 983(e).

Congress enacted section 983 as part of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA). *See* Civil Asset Forfeiture Reform Act of 2000, Pub.L. 106–185, 114 Stat. 202 (2000) (codified in 18 U.S.C. §§ 983, 985 and 28 U.S.C. §§ 2466–2467). A review of the legislative history indicates that Congress, in enacting CAFRA, sought to advance three broad policies. Foremost among Congress's goals in passing CAFRA was to "to increase the due process safeguards for property owners whose property has been seized." H.R.Rep. No. 106–192 at 2 (1999); *see also Vereda, Ltda. v. United States,* 271 F.3d at 1371 n. 4 ("Congress passed the Civil Asset Forfeiture Reform Act of 200 in an effort to address due process concerns associated with federal civil forfeitures.") (citation omitted); *United States v. Real Prop. in Section 9. Town 29 N., Range 1 W. Township of Charlton, Otsego County, Michigan,* 241 F.3d 796, 799 (6th Cir.), *reh'g denied* (2001) ("[CAFRA] is specifically designed to rectify an unfairness to the individual vis-a-vis the government.") [hereinafter *United States v. Real Property* ]. The floor debates in the Senate and House of Representatives make it evident that by the year 2000, many in the Congress had concluded that the old federal civil forfeiture statutes provided insufficient protection to the private property of innocent owners. *See, e.g.,* 145 Cong. Rec. H4852 (daily ed. June 24, 1999) (statement of Rep. Pryce) ("Our current civil asset forfeiture laws, at their core, deny basic due process . . . ."); 146 Cong. Rec. S1759 (daily ed. March 27, 2000) (statement of Sen. Hatch) ("Federal civil forfeiture procedures . . . provide inadequate protections for private property."). Representative Henry Hyde, a leading sponsor of civil forfeiture reform, declared on the floor of the House of Representatives that "[c]ivil asset forfeiture as allowed in our country today is a throwback to the old Soviet Union, where justice is the justice of the government and the citizen

did not have a chance." 145 Cong. Rec. H4854 (daily ed. June 24, 1999). The Committee on the Judiciary of the House of Representatives report indicated that reform was needed in order "to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures." H.R.Rep. No. 106–192 at 11. Congress, therefore, enacted CAFRA in part to address perceived abuse of the federal civil forfeiture laws. *See United States v. $80,180.00 in United States Currency,* 303 F.3d 1182, 1184 (9th Cir.2002) (noting that CAFRA was enacted in response to "widespread criticism" of the civil forfeiture "regime"); *United States v. Real Property,* 241 F.3d at 799 (noting that the civil forfeiture law "had been criticized repeatedly by the court's and legal commentators"). The United States Court of Appeals for the Sixth Circuit described CAFRA as "primarily remedial in nature. . . . It corrects an aberration that existed previously by leveling the playing field between the government and persons whose property has been seized." *United States v. Real Property,* 241 F.3d at 799.

The second policy Congress sought to advance by passing CAFRA was the standardization of federal civil forfeiture procedures. *See* Civil Asset Forfeiture Reform Act of 2000, Pub.L. 106–185, 114 Stat. 202 (2000) ("An Act To provide a more just and uniform procedure for Federal civil forfeitures, and for other purposes."); 145 Cong. Rec. 4860 (daily ed. June 24, 1999) (statement of Rep. Graham) ("[CAFRA] brings uniformity across the board in civil asset forfeiture statutes under the Federal law. . . . [The current law] is a haphazard catch-as-you-can series of statutes, and now is the time to correct that . . . ."); *see also United States v. $557,933.89. More or Less, in United States Funds,* 287 F.3d 66, 76 n. 5 (2d Cir.2002) ("[CAFRA] consolidated and dramatically overhauled the procedures for civil judicial forfeiture proceedings."). Accordingly, 18 U.S.C. § 983 is titled, "General rules for civil forfeiture proceedings," and the motion to set aside a declaration of forfeiture provided by section

983(e), as discussed above, is made available to "[a]ny person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute." 18 U.S.C. § 983(e)(1).

Finally, the legislators who enacted CAFRA sought to substantially preserve the civil forfeiture powers of federal law enforcement agencies, particularly the DEA, as those powers existed under the pre-CAFRA civil forfeiture statutes. *See, e.g.,* 146 Cong. Rec. H2053 (daily ed. April 11, 2000) (statement of Rep. Weiner) ("[T]oday's bill allows civil asset forfeiture to continue to be used as a tool by police and prosecutors across the country to shut down crack houses and seize drug-running speed-boats."); 146 Cong. Rec. S1762 (daily ed. March 27, 2000) (statement of Sen. Sessions) ("[CAFRA] would provide enhanced protections to private property owners and at the same time would not undermine ... the ability of law enforcement agencies to seize and forfeit ... assets from illegal drug dealers ...."). The floor debates in the Senate and House of Representatives show that some legislators were concerned that CAFRA's procedural reforms would "remov[e] the teeth from the most valuable tool in what seems to be a losing war against drugs." 145 Cong. Rec. H4871 (daily ed. June 24, 1999) (statement of Rep. Sweeney); *see also* 145 Cong. Rec. H4867 (daily ed. June 24, 1999) (statement of Rep. Hutchinson) ("This is not the time to disarm our soldiers and demoralize our police on the front line and it is certainly not the right time to send the signal to the drug dealers that we are weakening our resolve.").

In response to these types of concerns, CAFRA's supporters assured Congress that CAFRA would leave the underlying forfeiture authority of federal agencies substantially unaffected. According to one congressman, CAFRA "does not and will not eviscerate asset forfeiture power; it reforms,

but it does not kill.... [CAFRA] addresses basic procedures, not underlying authority." 145 Cong. Rec. H4861 (daily ed. June 24, 1999) (statement of Rep. Barr). The House Judiciary Committee Report also indicated that the CAFRA reforms would void only those provisions of the existing forfeiture laws which were inconsistent with the reforms: "To the extent these procedures are inconsistent with any preexisting federal law, these procedures apply and supercede preexisting law." H.R.Rep. No. 106–192 at 21. Congress, therefore, sought to reform the civil forfeiture laws in a way that "increases protections for property owners, while respecting the interests of law enforcement." 146 Cong. Rec. S1759 (daily ed. March 27, 2000) (statement of Sen. Hatch); *see also* 145 Cong. Rec. H4862 (daily ed. June 24, 1999) (statement of Rep. Jackson–Lee) ("[CAFRA] is a balance between property rights and law enforcement.").

The court's examination of CAFRA's history and purpose sheds new light on the meaning and effect of 18 U.S.C. § 983(e).[8] It is clear that subsection (e) is designed to promote the three legislative policies described above. For example, as the United States Court of Appeals for the Federal Circuit has observed, "the basic Constitutional requirement of due process of law is the right to be heard, and this 'right to be heard has little reality or worth unless one is informed that the matter is pending....'" *Litzenberger v. United States* 89 F.3d 818, 820 (Fed.Cir.1996) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Subsection (e) enhances due process protections by establishing a statutory means for challenging closed forfeiture proceedings on the grounds of defective notice. *Cf. Upshaw v. United States Customs Service,* 153 F.Supp.2d 46, 51 (D.Mass.2001) ("Under CAFRA, the statuto-

---

**8.** Unfortunately, the legislative record is nearly silent regarding 18 U.S.C. § 983(e). The provision first appears in the legislative record as part of a larger "amendment in the nature of a substitute" proposed by Representative Hutchinson in opposition to Representative Hyde's H.R. 1658. *See* 145 Cong. Rec. H4736 (daily ed. June 22, 1999). The provision of the Hutchinson amendment, which would become subsection (e), was

apparently incorporated, with some changes, into H.R. 1658 by the Senate. *See* 146 Cong. Rec. S1754–55 (daily ed. March 27, 2000). The Senate passed the amended bill with little debate and no committee report. *See* 146 Cong. Rec. H2049 (daily ed. April 11, 2000) (statement of Rep. Hyde). The House of Representatives concurred in the Senate's amendments with little debate. *See generally id.* at H2040–54.

ry procedure for challenging inadequacy of notice in a judicial hearing after the declaration of forfeiture seems to meet the minimal due process requirements of *Mullane*.") Subsection (e) also serves the congressional goal of standardizing federal civil forfeiture procedures, since it applies to "any nonjudicial civil forfeiture proceeding under a civil forfeiture statute." 18 U.S.C. § 983(e)(1). Finally, Congress limited the impact of subsection (e) on the forfeiture powers of federal agencies by providing that any motion to set aside forfeiture granted under subsection (e) shall be granted "without prejudice to the right of the Government to commence a subsequent forfeiture proceeding as to the interest of the moving party." 18 U.S.C. § 983(e)(2)(A). Subsection (e) of section 983 thus serves the legislative policies of increasing due policy protections to innocent owners, standardizing federal forfeiture procedures, and substantially preserving the civil forfeiture powers of federal agencies by providing claimants with a limited, uniform right to challenge closed forfeiture proceedings in cases in which notice was defective.

Subsection (e) does not, however, preempt the CSA as the original statutory authority for the seizure and forfeiture of assets "furnished or intended to be furnished by any person in exchange for a controlled substance...." 21 U.S.C. § 881(a)(6); *see also* 145 Cong. Rec. H4861 (daily ed. June 24, 1999) (statement of Rep. Barr) ("[CAFRA] addresses basic procedures, not underlying authority."). By its own terms, subsection (e) provides "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. § 983(e)(5). The $12,920.00 at issue in this case was forfeited "under" title 21, section 881 of the CSA, and those provisions of the CSA not amended by CAFRA still control. *See* H.R.Rep. No. 106–192 at 21 ("To the extent these procedures are inconsistent with any preexisting federal law, these procedures apply and supercede preexisting law.").

With respect to the issue of jurisdiction, the court is not persuaded that 18 U.S.C. § 983(e) amends

> [t]he statutory scheme established by the Controlled Substances Act [which] pro-

vides complete administrative review by DEA and judicial review in district court of (i) the merits of a seizure and forfeiture of property initiated under 21 U.S.C. § 881 and (ii) any related due process claims.

*Vereda, Ltda. v. United States*, 271 F.3d at 1375 (emphasis in original). Subsection (e) sets out a means for challenging ordinary closed civil forfeiture proceedings. *See* 18 U.S.C. § 983. Subsection (e) is silent, however, on the question of jurisdiction. The question of this court's jurisdiction over civil forfeiture proceedings commenced under the CSA, therefore, must be resolved by reference to the CSA and to the decisions of the United States Court of Appeals for the Federal Circuit. These authorities indicate that judicial review of challenges to ordinary civil forfeiture proceedings is allocated to the district courts. *See Crocker v. United States*, 125 F.3d at 1477.

The court's analysis of the legislative purpose behind CAFRA can be analogized to the Supreme Court's decision in *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52. Observing that the legislative history concerning the application of the then recently enacted Declaratory Judgment Act to the United States Court of Claims was ambiguous, the Supreme Court held that Congress had not intended to extend the Court of Claims' jurisdiction to cases brought under the Declaratory Judgment Act (DJA):

> [T]he Court of Claims' jurisdiction to grant relief depends wholly upon the extent to which the United States has waived its sovereign immunity to suit and that such a waiver cannot be implied but must be unequivocally expressed .... There is not a single indication in the Declaratory Judgment Act or its history that Congress, in passing that Act, intended to give the Court of Claims an expanded jurisdiction that had been denied to it for nearly a century. In the absence of an express grant of jurisdiction from Congress, we decline to assume that the Court of Claims has been given the authority to issue declaratory judgments.

*Id.* at 4, 89 S.Ct. 1501 (citations omitted). The congressional enactment of 18 U.S.C. § 983 cannot effect a silent or implied expan-

sion of the court's jurisdiction. The plaintiff's statutory claim, therefore, must be dismissed.

## CONCLUSION

In his complaint, Victor Ramirez challenges the administrative forfeiture of property under the CSA. Based on the above discussion, the court **GRANTS** the defendant's motion to dismiss the plaintiff's complaint. The Clerk's Office shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**