[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————

No. 08-14334

———————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 19, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-01102-CV-IPJ

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

CERTAIN REAL PROPERTY,
Located at 317 Nick Fitchard Road,
N.W., Huntsville, AL, together with all
improvements, fixtures, and appurtenances thereon,
ALL FUNDS ON DEPOSIT IN ACCOUNT
NUMBER 8011402644 Held in the name of
Axion Corporation, located at Colonial
Bank, P.O. Box 1887, Birmingham, AL 35201,
ALL FUNDS ON DEPOSIT IN ACCOUNT
NUMBER 8036513417 Held in the name of
Axion Corporation, located at Colonial Bank,
P.O. Box 1887, Birmingham, AL 35201,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 19, 2009)

Before DUBINA, Chief Judge, EDMONDSON and HILL, Circuit Judges.

DUBINA, Chief Judge:

The government appeals from a final order of the district court awarding attorney fees in a civil forfeiture action. This case requires that we determine, as a matter of first impression, whether attorney fees incurred in the defense of a criminal action may be awarded in a related civil forfeiture action under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") § 4(a), 28 U.S.C. § 2465(b)(1) (2006), without regard for the stringent limitations on attorney-fee awards in criminal cases under the Hyde Amendment, Act of Nov. 26, 1997, Pub. L. No. 105-119, tit. VI, § 617, 111 Stat. 2440, 2519 (1997), *reprinted in* 18 U.S.C. § 3006A (2006), historical and statutory notes [hereinafter Hyde Amendment].

## I. BACKGROUND

In August 2003, Axion Corporation ("Axion") secured a $3.7 million contract with the United States Army to supply parts for a Black Hawk helicopter.

In June 2006, the government filed a civil *in rem* forfeiture complaint in the United States District Court for the Northern District of Alabama pursuant to 18 U.S.C. § 981(a)(1)(A) (2006) against two of Axion's bank accounts and the parcel of real property where the company is located on the basis that Axion had violated the terms of the contract, as well as several federal laws. There are three claimants to the defendant properties: Axion; its president, Alex Nooredin Latifi ("Latifi"); and Latifi's wife, Beth Latifi (collectively, "the claimants"). The government filed a motion before Judge Virginia Emerson Hopkins to stay the civil forfeiture proceeding pursuant to CAFRA § 8(a), 18 U.S.C. § 981(g)(1), which directs the district court to "stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case."[1] Judge Hopkins granted the motion to stay the civil forfeiture action.

In March 2007, the government filed an indictment against Axion and Latifi in the United States District Court for the Northern District of Alabama. The

---

[1] "[T]he terms 'related criminal case' and 'related criminal investigation' mean an actual prosecution or investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made. In determining whether a criminal case or investigation is 'related' to a civil forfeiture proceeding, the court . . . consider[s] the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors." 18 U.S.C. § 981(g)(4).

criminal case was assigned to Judge Inge Prytz Johnson. A superseding indictment charged Latifi and Axion with two counts of exporting without the required license defense articles or defense services designated by the President for inclusion in the United States Munitions List, in violation of the Arms Export Control Act, 22 U.S.C. § 2778(b)(2), (c) (Counts 1 and 6); making a false representation concerning an aircraft part, in violation of 18 U.S.C. § 38(a)(1)(C) (Count 2); and making false statements, in violation of 18 U.S.C. § 1001 (Count 3). The indictment also included two criminal forfeiture counts (Counts 4 and 5).[2] Judge Johnson held a seven-day bench trial that resulted in an acquittal on all counts.

After the criminal charges against Latifi and Axion were dismissed, the civil case was transferred to Judge Johnson. The government filed a motion to dismiss the civil forfeiture case with prejudice, which also contained a request for a certificate of reasonable cause under 28 U.S.C. § 2465(a) (2006). In their response, the claimants agreed that the case should be dismissed with prejudice

---

[2] The indictment specifically alleged that Latifi and Axion, who had been awarded a contract by the U.S. Army to produce bifilar weight assemblies for Black Hawk helicopters, knowingly and willfully exported to China technical drawings of the bifilar weight assembly for the UH 60 Black Hawk without first obtaining a license and authorization from the State Department's Directorate of Trade Controls. In addition, Latifi and Axion allegedly fraudulently misrepresented to the U.S. Army the source of a part used in the production of the bifilar weight assembly and made false statements in test reports submitted to the U.S. Army regarding a separate product that was the subject of a separate contract.

and asserted that such a dismissal entitled them to attorney fees under CAFRA. The claimants also objected to the government's request for a certificate of reasonable cause. The government then filed a motion for leave to withdraw its motion to dismiss with prejudice. Judge Johnson granted the motion to withdraw and set a hearing on the motion for a certificate of reasonable cause. The government filed a motion to dismiss without prejudice, stating that it no longer intended to pursue the civil forfeiture case. The claimants again asserted that the case should be dismissed with prejudice. The government then filed a notice with the court stating that the government was withdrawing its request for a certificate of reasonable cause. On April 2, 2008, the district court dismissed the case with prejudice and concluded that the claimants were "entitled to recover reasonable attorneys' fees and costs along with interest pursuant to the provisions of CAFRA." (Or., R. 72 at 8.)

On May 29, 2008, the district court opined that, pursuant to CAFRA, the claimants are entitled to recover both fees incurred in defending the civil forfeiture action and fees incurred in defending the criminal case and ordered the payment of such fees and interest. *United States v. Certain Real Prop.*, 566 F. Supp. 2d 1252, 1261–62 (N.D. Ala. 2008). Citing *Webb v. Board of Education of Dyer County, Tennessee*, 471 U.S. 234, 105 S. Ct. 1923 (1985), the district court found that the

5

attorney fees incurred in the criminal case, a "related proceeding," are recoverable in the civil forfeiture action because the work was "'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'" *Id.* at 1261 (quoting *Webb*, 471 U.S. at 243, 105 S. Ct. at 1928). The court first found that the criminal case work was useful, saying:

> [T]he work done by the claimants' attorneys in the criminal case was clearly useful as it directly resulted in the dismissal of the civil forfeiture case. In fact, the claimants were required to litigate the civil forfeiture case through the criminal case because of the stay imposed on the civil forfeiture case. If Latifi and Axion had been convicted in the criminal case, then the property would have been immediately subject to forfeiture. If the defendants were acquitted, as they were, then that result would not have had res judicata effect on this civil forfeiture case. . . . [T]he government had no intention of pursuing the civil forfeiture case after Latifi and Axion were acquitted. Thus, the acquittal in the criminal case directly led to the dismissal of the civil forfeiture case. Indeed, the only way for the claimants to obtain a dismissal of the civil forfeiture case was by obtaining an acquittal in the criminal case.

*Id.* (citations omitted). The court then concluded that "[t]he work was . . . of a type ordinarily necessary to secure the final result obtained from the litigation since the civil proceeding was stayed pursuant to CAFRA and . . . the only way for the claimants to succeed was to gain an acquittal in the criminal trial." *Id.* The court acknowledged that "[a]warding the claimants fees for work done in the criminal case clearly allows the claimants to avoid the stricter requirements for

6

recovering attorneys' fees under the Hyde Amendment," *id.*, which requires claimants recovering such fees in a criminal case to prove "that the position of the United States was vexatious, frivolous, or in bad faith." Hyde Amendment. The district court added that "if [it] were to find that fees incurred defending the criminal case were not recoverable under CAFRA, then the government would be allowed to avoid CAFRA, as it has tried to do in this case, by moving for a stay in the civil case and prosecuting the criminal case." 566 F. Supp. 2d at 1261.

The district court's total attorney-fee award before deductions[3] was $414,198.50; the district court attributed $292,929.50 of this award to 1327.7 hours of work on the criminal case.[4] *Id.* at 1262. The ultimate award minus deductions was $363,956.92.[5] The government then perfected this appeal.

---

[3] The district court concluded that certain deductions were warranted for things such as secretarial work and unbilled hours. These deductions are not a subject of this appeal.

[4] The government suggests in its briefing that the district court should have attributed certain fees to the defense of the criminal action, and not to the defense of the civil action, but does not appeal the district court's findings of fact. *See* Br. of Appellant 12 n.3; Reply Br. of Appellant 2 ("We do not here challenge the district court's calculation of the number of hours reasonably expended by the defense in the civil forfeiture proceeding or in the criminal prosecution . . . ."). Because we are not called upon to review the district court's findings of fact, we do not opine on them here. Recalculation of the fees due to claimants upon remand is left to the discretion of the district court.

[5] The district court's initial award was for $363,259.92. 566 F. Supp. 2d at 1334. This amount was increased by the district court on June 5, 2008, to $363,956.92, based on additional evidence filed by the claimants. (Or., R. 78 at 1–2.)

On appeal, the government urges, *inter alia*, that CAFRA's plain language limits the award of attorney fees under §4(a), 28 U.S.C. § 2465(b)(1) to those fees incurred for work done explicitly for the civil forfeiture proceeding.[6] The claimants counter, in accord with the district court, that the Supreme Court has decided in other contexts that similarly-worded fee-shifting statutes encompass the award of fees incurred outside of the statutorily-named litigation and that this precedent allows them to recover under CAFRA fees incurred in the defense of a related criminal case.

## II. STANDARD OF REVIEW

"'The proper standard for an award of attorney's fees is a question of law that we review *de novo*.'" *Morillo-Cedron v. Dist. Dir. for the U.S. Citizenship & Immigration Servs.*, 452 F.3d 1254, 1256 (11th Cir. 2006) (quoting *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904 (11th Cir. 2003)).

## III. DISCUSSION

After thorough review of the record, we conclude that the contours of Congress's waiver of the United States government's sovereign immunity in the

---

[6] The government also argues that even if such fees can be awarded under CAFRA, the requirements for an attorney-fee award under the Hyde Amendment must be satisfied so as not to provide a means around the strictures of the Hyde Amendment. Because we conclude that the fees incurred in defense of the criminal action cannot be recovered under CAFRA, we do not address this contention.

CAFRA fee-shifting provision can be determined by looking to the plain language and structure of CAFRA. We hold that attorney fees incurred in the defense of a criminal action, even if related to a civil forfeiture action as in the present case, cannot be awarded under CAFRA. This holding is supported by CAFRA's legislative history, and we find the Supreme Court cases cited by the district court inapplicable in this context.

## A.

To determine whether attorney fees for work done in a criminal prosecution may be awarded in a related civil forfeiture action under CAFRA § 4(a), 28 U.S.C. § 2465(b)(1), we turn first to the text of the statute to discern congressional intent. CAFRA's fee-shifting provision provides in pertinent part:

> [I]n any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for –
>
> (A) reasonable attorney fees and other litigation costs reasonably incurred by the claimant; [and]
>
> (B) post-judgment interest, as set forth in Section 1961 of this title.

CAFRA § 4(a), 28 U.S.C. § 2465(b)(1).

Our interpretation of the CAFRA fee-shifting provision is guided by principles of sovereign immunity, which bar the award of attorney fees against the United States absent explicit congressional authorization. *See Ruckelshaus v.*

9

*Sierra Club*, 463 U.S. 680, 685 & n.7, 103 S. Ct. 3274, 3277–78 & n.7 (1983); *see also Ardestani v. U.S. Dep't of Justice*, 904 F.2d 1505, 1509 (11th Cir. 1990) ("A court may not grant attorneys' fees and costs against the United States in the absence of a congressional or constitutional waiver of sovereign immunity which grants it the authority to do so." (internal quotation marks omitted)). A waiver of the United States government's sovereign immunity must be "unequivocal," *Dep't of Energy v. Ohio*, 503 U.S. 607, 615, 112 S. Ct. 1627, 1633 (1992), *superseded by statute*, Federal Facility Compliance Act of 1992, Pub. L. No. 102-386, § 102, 106 Stat. 1505, and the provision "must be construed strictly in favor of the sovereign . . . and not enlarged beyond what the language requires," *Ruckelshaus*, 463 U.S. at 685–86, 103 S. Ct. at 3278 (internal quotation marks and citations omitted); *see also Ardestani*, 904 F.2d at 1509 (stating that a statute that "waives sovereign immunity in allowing attorney fees against the United States . . . must be construed strictly").

On its face, the language of CAFRA's fee-shifting provision appears to contemplate only the award of attorney fees incurred in the civil forfeiture action. *See* CAFRA § 4(a), 28 U.S.C. § 2465(b)(1) ("[I]n any civil proceeding to forfeit property . . . ."). Without an express waiver of the government's sovereign immunity, we cannot find that such a waiver exists. To justify its award of the

10

fees incurred in defending Axion and Latifi's criminal case, the district court characterized the civil forfeiture action as having been litigated "through the criminal case because of the stay imposed on the civil forfeiture case." 566 F. Supp. 2d at 1261. The district court's characterization states precisely why we cannot find that the attorney fees incurred in defending the criminal case are recoverable in the civil forfeiture action under the auspices of CAFRA: the fees were incurred in the defense of a criminal action, not a civil forfeiture action or proceeding in support of a civil forfeiture action.

Our reading of the fee-shifting provision is supported by CAFRA's structure. When Congress fashioned CAFRA's fee-shifting provision in 2000, it simultaneously expanded the government's ability to seek a stay of the civil forfeiture proceeding in light of an ongoing criminal investigation or prosecution—precisely the mechanism used by the government in this case. *See* CAFRA § 8(a). Congress effectively gave the government the ability to choose which to pursue first—a civil forfeiture action, a related criminal investigation, or the prosecution of a related criminal case—as long as "the [district] court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." *See* CAFRA § 8(a), 18 U.S.C. § 981(g)(1).

Congress provided property claimants the protections it thought appropriate while retaining the usefulness of civil forfeitures in law enforcement activities. *Cf. Ramirez v. United States*, 57 Fed. Cl. 240, 250–51 (Fed. Cl. 2003) (noting Congress's intent that CAFRA "leave the underlying forfeiture authority of federal agencies substantially unaffected"). First, the Act provides that in lieu of staying the civil forfeiture action, the district court can issue a protective order limiting discovery. CAFRA § 8(a), 18 U.S.C. § 981(g)(3). Second, if the district court determines that a stay is necessary to protect the government's related criminal investigation or case, § 981(g)(6) directs the court to "enter any order necessary to preserve the value of the property or to protect the rights of lienholders or other persons with an interest in the property while the stay is in effect."[7] The express terms of CAFRA's fee-shifting provision do not go further and expressly allow the award of fees incurred in defense of a related criminal case in the civil forfeiture action if the claimants are acquitted of the criminal charges. We cannot waive the government's sovereign immunity and attempt to fashion such an additional

---

[7] We also note that the stay of a civil forfeiture action where there is a related criminal action often can serve to benefit criminal defendants who are claimants to the property that is the subject of the civil forfeiture action; the stay in the civil case prevents the government from using civil discovery as a means to obtain information to flesh out the criminal case against the claimants. *See Afro-Lecon, Inc. v. United* States, 820 F.2d 1198, 1203 (Fed. Cir. 1987) ("The broad scope of civil discovery may present to both the prosecution, and at times the criminal defendant, an irresistible temptation to use that discovery to one's advantage in the criminal case."); *see also United States v. A Certain Parcel of Land*, 781 F. Supp. 830, 834–35 (D. N.H. 1992) (granting a stay of discovery in a civil forfeiture action to protect a criminal defendant's Fifth Amendment rights).

12

protection where Congress has not chosen to do so. *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002) ("[C]ourts ought not add to what the legislature has said is the law. . . . Our function is to apply statutes, to carry out the expression of the legislative will that is embodied in them, not to 'improve' statutes by altering them."); *Harris v. Garner*, 216 F.3d 970, 976 (11th Cir. 2000) (en banc) ("We will not do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to rewrite it."); *see also Ewing & Thomas, P.A. v. Heye*, 803 F.2d 613, 616 (11th Cir. 1986), *superseded by statute*, Act of July 30, 1996, Pub. L. No. 104-168, Title VII, secs. 701(a)–(c), 702(a), 703(a), 704(a), 110 Stat. 1463, 1464 ("An amendment to a statute is clearly a legislative, not a judicial function. We cannot now do what Congress may have wanted to accomplish but has left undone.").

The language of the seizure and stay provisions in § 981 also demonstrates that Congress was fully cognizant that work done in defense of a criminal case may be used to defend against a civil forfeiture. For example, in order to determine "whether a criminal case or investigation is 'related' to a civil forfeiture proceeding" so as to warrant a stay, Congress instructed the district court to "consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings." *See* 18 U.S.C. § 981(g)(4). In

addition, one justification for granting a claimant's request for a stay of the civil forfeiture action is that discovery in the civil case may uncover information useful in the criminal prosecution. *See* 18 U.S.C. § 981(g)(1)–(3). Despite Congress's acknowledgment of the interconnectedness of civil forfeiture and criminal proceedings, Congress's waiver of sovereign immunity in the CAFRA fee-shifting provision does not expressly state that claimants in civil forfeiture proceedings can obtain in the civil proceeding those fees they incur as criminal defendants in a related criminal case.

The claimants urge that "CAFRA would be rendered meaningless if the government could always evade liability by litigating in the criminal forum." (Br. of Appellee 30.) Likewise, the district court said that if it "were to find that fees incurred defending the criminal case were not recoverable under CAFRA, then the government would be allowed to avoid CAFRA." 566 F. Supp. 2d at 1261. These arguments ignore two important points. First, claimants in civil forfeiture actions do not always face criminal charges; Beth Latifi is a prime example. Second, by designing the civil forfeiture action stay provision as it did, Congress expressly authorized the "strategy," *see* Br. of Appellee 31, used by the government in this case.

Viewing the statutory scheme in its entirety, we cannot conclude that in addition to the protections expressly laid out in statute, Congress implicitly provided that the fees incurred in defense of a related criminal case can be recouped in the civil case. As we have repeatedly said, it is not the courts' place to fashion additional protections, and, in this instance, the sovereign immunity of the United States precludes us from doing so.

Our holding also is consistent with the concerns expressed by Congress in CAFRA's legislative history. As explained by the district court, "the stated purpose of CAFRA is 'to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures.'" 566 F. Supp. 2d at 1260 (quoting H.R. Rep. No. 106-192, at 11 (1999)). The U.S. House of Representatives Committee on the Judiciary expressed concern that "many civil seizures are not challenged" due to the costs involved in challenging them. H.R. Rep. No. 106-192, at 14 (1999). Similarly, the Committee expressed concern "with the arduous path one must journey [in a civil forfeiture action] against a presumption of guilt, often without the benefit of counsel, and perhaps without any money left after the seizure with which to fight the battle." *Id.* (internal quotation marks and citations omitted). We have not found anything in

15

the legislative history, however, that indicates Congress was troubled by the fact that civil forfeiture action claimants who are criminal defendants in related cases bear the costs of their criminal defenses under the traditional American Rule.[8]  As we note below, where Congress had such concerns, it addressed them with the Hyde Amendment.  In describing the ills of the former civil forfeiture action system, the House of Representatives Committee on the Judiciary's report on CAFRA, then H.R. 1658, described two instances where property owners incurred great expense in trying to regain their properties after civil forfeitures.  *See* H.R. Rep. No. 106-192, at 8, 10.  In both of the examples provided, the claimants were not prosecuted for crimes associated with the civil forfeiture.  *See id.* at 8–9 (describing a case where criminal charges "were quickly dropped for lack of evidence, [but] the government refused to release [the property]" and the claimant ultimately was forced to declare bankruptcy as a result of the seizure); *id.* at 10–11 (describing a case in which no criminal charges were filed, but a motel was seized for "tacit approval of illegality" and the owners "were forced to spend substantial amounts of time and money on hiring an attorney and defending against the

---

[8] "Under the American Rule, United States courts follow a general practice of not awarding fees to a prevailing party in a suit." *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904 (11th Cir. 2003) (internal quotation marks omitted); *accord United States v. Aetna Ins. Co.*, 831 F.2d 978, 983 (11th Cir. 1987) (stating that under the American Rule "[p]arties must pay their own ways as far as legal costs").  "[T]he default assumption is that each party is responsible for its own legal fees, and thus fees ordinarily will not be awarded to the prevailing party without express statutory authority." *Johnson v. Florida*, 348 F.3d 1334, 1350 (11th Cir. 2003).

16

government's forfeiture action" (internal quotation marks omitted)).  The descriptions of these cases imply that had these claimants been the subject of legitimate ongoing criminal investigations and prosecutions, Congress would not have had similar concerns.

The CAFRA fee-shifting provision was designed to make claimants whole for their efforts to recover their property in a civil forfeiture action.  The purpose of defending a criminal prosecution is not to recover property, but to defend the accused's freedom.  Where the criminal prosecution is "brought vexatiously, in bad faith, or so utterly without foundation in law or fact as to be frivolous," the Hyde Amendment provides the means of recovery.  *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999).  Otherwise, unless the defendant is indigent, he bears the cost of his own defense.  We find nothing in the legislative history of CAFRA to counter this interpretation.

## B.

The district court based its award of attorney fees for Axion and Latifi's criminal case work[9] on two Supreme Court cases where the Court determined that

---

[9] In its categorization of attorney fees as either having been incurred in relation to Axion and Latifi's criminal defense or the civil forfeiture action, the district court assigned to the criminal case fees incurred in defending U.S. Army administrative proceedings concerning suspension or debarment of Axion as a defense contractor ($1,522) and in preparation for potential False-Claims-Act proceedings ($51), concluding that the government may have introduced those issues as other-act evidence.  We do not disturb that finding.

17

similarly-worded fee-shifting statutes allowed for the award of attorney fees incurred outside of the actual litigation: *Webb v. County Board of Education of Dyer County, Tennessee*, 471 U.S. 234, 105 S. Ct. 1923 (1985), and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air* (*Delaware Valley I*), 478 U.S. 546, 106 S. Ct. 3088 (1986). 566 F. Supp. 2d at 1260–62. We find these cases distinguishable.

The district court drew primarily upon *Webb*, where the Supreme Court concluded that attorney fees for work done in optional state administrative proceedings may be awarded to a prevailing civil rights litigant under 42 U.S.C. § 1988 to the extent that a "discrete portion" of the work was "useful and of a type ordinarily necessary" to the successful outcome of the subsequent litigation. *Webb*, 471 U.S. at 241, 243, 105 S. Ct. at 1928–29. At the time of the *Webb* decision, the § 1988 fee-shifting provision read in pertinent part:

> In any action or proceeding to enforce a provision of §§ 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

*See id.* at 236 n.1, 105 S. Ct. at 1925 n.1. After successful settlement of a civil rights action under 42 U.S.C. § 1983 against a school board, a tenured black elementary school teacher filed in the district court a motion for an award of

18

attorney fees under 42 U.S.C. § 1988. *Id.* at 237–38, 105 S. Ct. at 1925–26. The school board had dismissed him and upheld the dismissal in a series of administrative proceedings. *Id.* at 237, 105 S. Ct. at 1925. The district court denied those fees incurred by the teacher in defense of the school administrative proceedings, but awarded fees for work done on the federal court litigation. *Id.* at 239, 105 S. Ct. at 1926. The Sixth Circuit affirmed the district court's ruling. *Id.* The Supreme Court also affirmed, stating that the plaintiff had not established that "any discrete portion of the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." *Id.* at 243, 105 S. Ct. 1928–29. Although the Court affirmed the denial of the fees incurred in defense of the administrative proceedings *in toto*, it indicated that attorney fees for time spent pursuing optional administrative proceedings may be included in the calculation of a reasonable attorney fee awarded under § 1988 if the work is specifically identified and is "useful and of a type ordinarily necessary" to secure the final result obtained from the litigation.[10] *Id.*

---

[10] The Court indicated that it could address only the question presented to the district court: "whether the time spent on the administrative work . . . should be included [in the attorney fees award] in its entirety or excluded in its entirety." *Id.* at 243, 105 S. Ct. at 1929.

19

The district court also cited *Delaware Valley I*, where the Court applied *Webb* and held that work done to monitor and enforce implementation of a consent decree entered into by the Commonwealth of Pennsylvania (including participation in regulatory proceedings and review of proposed regulations) constituted compensable attorney fees under the Clean Air Act, 42 U.S.C. § 7401. *Delaware Valley I*, 478 U.S. at 561, 106 S. Ct. at 3096. The Clean Air Act fee-shifting provision read as follows:

> The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

*See id.* at 557, 106 S. Ct. at 3094. In *Delaware Valley I*, private citizens filed suit against the Commonwealth to compel implementation of a vehicle emission inspection and maintenance program required by the Clean Air Act. *Id.* at 549, 106 S. Ct. at 3090. To aid in enforcement of the resultant consent decree, attorneys for the citizens' council commented on the state transportation department's regulations and participated in Environmental Protection Agency hearings. *Id.* at 550, 552–53, 106 S. Ct. at 3090, 3092. The district court awarded fees for these activities under the Clean Air Act, 42 U.S.C. § 7401. *Id.* at 553, 106 S. Ct. at 3092. The Third Circuit affirmed. *Id.* at 556, 106 S. Ct. at 3093. The Supreme Court also affirmed, concluding that although the work did not "occur in

20

the context of traditional judicial litigation," it was compensable because it was "useful" and "necessary" in that it helped to protect the relief awarded under the consent decree and thus was crucial to the vindication of the party's rights. *Id.* at 560–61, 106 S. Ct. at 3096.

As we stated earlier, *Webb* and *Delaware Valley I* are distinguishable from the present case. First, in both *Webb* and *Delaware Valley I*, the issue was the award of attorney fees for work done with regard to non-judicial activities under the authority of statutory fee-shifting provisions relevant to particular judicial actions or proceedings. For example, in *Webb*, the Court considered the applicability of the § 1988 fee-shifting statute designed for § 1983 civil rights cases to voluntarily-pursued school board administrative proceedings. *Webb*, 471 U.S. at 239, 105 S. Ct. at 1926. In *Delaware Valley I*, the Court affirmed the applicability of the Clean Air Act's fee-shifting statute to post-litigation activities before a regulatory body and in administrative hearings. *Delaware Valley I*, 478 U.S. at 561, 106 S. Ct. at 3096. In both instances the Supreme Court indicated that attorney fees may be awarded for these extra-judicial activities where they are sufficiently connected to a single court action that is subject to the relevant statutory fee-shifting provision. In contrast, the district court in this case awarded attorney fees incurred in defending a separate judicial proceeding. Fees incurred

21

for Axion and Latifi's criminal defense are not like the fees incurred in *Webb* and *Delaware Valley I* for extra-judicial activities in support of litigation that itself was subject to the relevant fee-shifting provision. *Cf. Greer v. Holt*, 718 F.2d 206, 208 (6th Cir. 1983) (explaining that the award of attorney fees for work in an administrative proceeding in support of a civil action subject to a fee-shifting statute is different from the award of fees incurred in defense of a criminal proceeding that—even though it is based on the same operative facts—is separate from a civil proceeding subject to a fee-shifting statute).

Second, awarding the attorney fees for optional administrative proceedings and post-litigation activities in *Webb* and *Delaware Valley I* was in furtherance of the purposes of the fee-shifting statutes at issue in those cases. The Court explained in *Delaware Valley I* that the fee-shifting provisions at issue in *Delaware Valley I* and *Webb* were enacted to ensure effective enforcement of certain important federal interests through citizen suits. *Delaware Valley I*, 478 U.S. at 559–60, 106 S. Ct. at 3095. "[T]he common purpose of both § 304(d) and § 1988 to promote citizen enforcement of important federal policies," *id.* at 560, 106 S. Ct. at 3096, required the award of attorney fees for these extra-litigation activities. For example, with regard to civil rights claims, the Court noted that "Congress found that many legitimate claims would not be redressed" "unless

22

reasonable attorney's fees could be awarded." *Id.* at 560, 106 S. Ct. at 3095.

There is no comparable concern here, where the criminal defendants Axion and

Latifi were sufficiently motivated by the criminal charges to avidly pursue their

criminal defense. *Cf. Kahane v. UNUM Life Ins. Comp. of Am.*, 563 F.3d 1210,

1215 (11th Cir. 2009) (affirming denial of attorney fees for work done in ERISA

pre-litigation administrative proceedings where injecting attorneys into those

proceedings "could severely undermine the congressional purpose" (internal

quotation marks omitted)). The present case is akin to *Greer v. Holt*, 718 F.2d 206

(6th Cir. 1983). In an action brought under 42 U.S.C. § 1983, Greer asserted that

police officers assaulted and beat him while he was in their custody. *Greer*, 718

F.2d at 207. Prior to filing that federal claim, Greer was prosecuted in state court

for assault and battery of the police officers arising from the same circumstances.

*Id.* Greer was acquitted of the criminal charges, which was necessary for his

success in his § 1983 action, and he thereafter prevailed in his civil rights suit. *Id.*

The Sixth Circuit upheld the denial of attorney fees in the federal civil case under

§ 1988 for work done in the criminal prosecution because, "[s]trategically, the

attorneys for Greer had little choice but to pursue a full defense to the criminal

charges." *Id.* at 208.

C.

While our reading of CAFRA § 4(a), 28 U.S.C. § 2465(b)(1) alone is sufficient to warrant a reversal of the district court's award of attorney fees for work done in defense of a criminal prosecution, we add that the Hyde Amendment also supports our conclusion. The claimants urge that the Hyde Amendment has no place in our analysis of this case because the district court awarded the fees in question in a civil forfeiture action to which the Hyde Amendment does not apply. We disagree. The district court awarded under CAFRA fees incurred in defense of a criminal action, which are subject to the Hyde Amendment.

> The Hyde Amendment provides in pertinent part:
>
> [T]he court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) . . . may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under [the Equal Access to Justice Act (EAJA), 28 U.S.C. §] 2412.

As the district court acknowledged, "any award in this case which includes fees incurred in the criminal case would allow the claimants to recover those fees without proving that the position of the United States was vexatious, frivolous, or in bad faith." 566 F. Supp. 2d at 1261 (internal quotation marks omitted). The

24

district court's acknowledged circumvention of the Hyde Amendment was inappropriate.

## IV. CONCLUSION

The district court ruled that, in a civil forfeiture action, CAFRA permits recovery of fees incurred in the defense of a related criminal proceeding where that work was "useful" and of the type "ordinarily necessary" to the successful outcome of the subsequent civil forfeiture action. Because we reject the district court's conclusion for the reasons stated above, we vacate the May 29, 2008 order of the district court awarding the claimants attorney fees under CAFRA § 4(a), 28 U.S.C. § 2465(b)(1) and remand this case for recalculation of the fees and interest due consistent with this opinion.[11]

**VACATED and REMANDED.**

---

[11]We note that Axion and Latifi's motion for attorney fees and costs pursuant to the Hyde Amendment filed in the related criminal case on December 12, 2007, remains pending. The district court stayed all further proceedings in the criminal case until this court issued the instant decision. Upon remand of this case, the district court may want to consider Axion and Latifi's motion for attorney fees and costs in the related criminal proceeding.

HILL, Circuit Judge, dissenting:

We are reviewing one case – the civil case for forfeiture.  Nine months after it was filed, the government brought criminal charges.

Asserting that civil discovery would adversely affect the government's position in the criminal case, the government moved for and was granted a stay of the civil case.  Discovery was frozen.

The lawyers retained to represent clients in the civil forfeiture case found themselves faced with a criminal case that could be disastrous to their clients' interests.  Would it be work "useful" to their clients and work "of a type ordinarily necessary" to competently represent them?  Of course, it was not only useful.  It was necessary.  *See Webb v. Board of Educ. of Dyer County, Tenn.*, 471 U.S. 234, 243, 105 S.Ct. 1923, 1928 (1985).

Affidavits of experienced counsel stated under oath that ". . . it would be impossible to defend this civil forfeiture action without defending and obtaining an acquittal in the underlying criminal action."  There is no dispute.  Counsel representing the appellees in this civil action would have been inadequate to the point of malpractice to have ignored the new criminal case.

Were counsel to monitor another case on trial in court in another jurisdiction, noting the quality of evidence and impact of witnesses, that would be

26

"useful."  It would be work "of a type ordinarily necessary" to competent representation.

Fees incurred in that useful and necessary work were properly awarded.  It was there that the forfeiture action was defeated.

I would affirm.